IN THE UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

_____
                                        :
ASHSHAKIR J. CAMPFIELD                  :
                                        :       CIVIL ACTION NO.
                    Plaintiff,          :
                                        :
            v.                          :
                                        :
NEW JERSEY TRANSIT                      :
                                        :
                    Defendant.          :
_____:

## *COMPLAINT*

1.      Plaintiff, Ashshakir J. Campfield is an adult individual (African American) domiciled in the Commonwealth of Pennsylvania, residing at 48 Sherwood Drive, Levittown, Pennsylvania 19054.

2.      Defendant, New Jersey Transit is a public and/or quasi-public transportation company operating in the State of New Jersey, having a place of business at 350 Newton Avenue, Camden, New Jersey, and its headquarters at One Penn Plaza East-Third Floor, Newark, New Jersey 07105 ("NJ Transit").

## *JURISDICTION AND VENUE*

3.      This district court has jurisdiction over this action against the defendant pursuant to the ERISA laws, 29 U.S.C. §1001 *et seq.*, as amended, and related federal regulations.

4.      Jurisdiction over this action is further conferred on this district court pursuant to the Family Medical Leave Act, as amended, 29 U.S.C. §2601 *et seq.* ("FMLA").

5.      This district court further has jurisdiction over the action pursuant to 28 U.S.C. §1656, in that the cause of action arises under The Civil Rights Act of 1866, as amended, 42

1

U.S.C. §1981; and 42 U.S.C. §1983; and invokes the anti-discrimination provisions of those laws.

6.      This court has pendent jurisdiction over the state claim arising under the New Jersey Law Against Discrimination. N.J.S.A. 10:5-1 - 42 ("LAD").

7.      Venue is proper in this judicial district pursuant to 28 U.S.C. §1391(e), in that defendant is headquartered in this state and operates the bus terminal where plaintiff worked in this vicinage, a substantial part of the events or omissions giving rise to the claim occurred in this district and vicinage, and no real property is involved.

## *FACTUAL BACKGROUND*

8.      Plaintiff began his employment with NJ Transit on September 16, 2010, as a bus driver operating equipment out of the Camden, New Jersey terminal located at 350 Newton Avenue.  Plaintiff was a bus driver in the Camden terminal when he was terminated.

### *Background of the ERISA claim*

9.      On September 23, 2016, Jennifer Piccoli (Caucasian), day shift terminal manager, signed plaintiff's NJ Transit disability benefits form, confirming plaintiff's medical disability began on September 20, 2016.

10.     On September 28, 2016, plaintiff's physician signed a medical certificate (NJ Transit) form stating plaintiff's period of disability as "09/26/2016 to ongoing".

11.     On October 25, 2016 plaintiff's medical providers (Rothman Institute) signed and faxed to NJ Transit plaintiff's initial claim report that plaintiff was medically ordered off work since 09/20/2016 and "no work until cleared by ortho", "hand specialist app[ointment][sic]."

12.     On November 14, 2016, plaintiff's physicians (Rothman Institute) signed and faxed to NJ Transit his initial claim report for disability, that plaintiff since September 20, 2016

was "out of work until cleared by ortho" and "no work, surgery scheduled 12/07/2016."

13.    The same attending physician's form stated no return-to-work date, "out until released by ortho tentatively 01/31/2017[sic]" and that plaintiff had been ordered to cease work on 09/20/2016.

14.    On February 17, 2017 NJ Transit Medical Services received plaintiff's orthopedic physician's statement from Rothman Institute (NJ Transit form) that plaintiff had hand surgery on December 7, 2016 with an estimated return-to-work date of March 19, 2017.

15.    Plaintiff returned to work on March 19, 2017 following his hand surgery on December 7, 2016, then falsely assessed two points for a "miss" on November 2, 2017, causing his unlawful termination as more fully explained below.

### *Background of the FMLA claim*

16.    On January 25, 2017, the Bus FMLA Coordinator wrote to plaintiff telling him his disability leave that began on September 20, 2016 also qualified as FMLA leave, and the leave had been designated as FMLA leave running concurrently for 12 weeks with plaintiff's disability.

17.    In this letter, the Bus FMLA Coordinator also told plaintiff he had exhausted his "FMLA entitlement" on December 12, 2016 and the FMLA leave designation had "closed as of that date."

18.    In the same letter, the Coordinator told plaintiff the "remainder of his leave would continue as a disability and will result in one total occurrence [a "point"] under the Attendance Policy…[and] this action is done primarily for administrative purposes."

19.    Plaintiff never requested nor applied for FMLA leave in connection with his approved disability in 2016, and NJ Transit never informed plaintiff he was on FMLA leave until *after* the Bus Coordinator told him FMLA leave had ended.

20.     NJ Transit never placed plaintiff on FMLA leave nor informed him of the dates of the leave orally or in writing, and provided no documentation he was on FMLA concurrent leave during any period of time he was on approved disability in 2016 or 2017.

21.     The employment and attendance policies of NJ Transit prohibit NJ Transit from meting discipline or adverse action towards an FMLA-status employee, and nothing under any policy supports assigning plaintiff a point for one total occurrence for "administrative purposes."

22.     Nothing in the collective bargaining contract or NJ Transit policies support assigning an "administrative" attendance point simply because FMLA leave ended while the employee was on approved disability leave, whether or not the employee elected FMLA.

23.     By law, and under NJ Transit policy, nothing permitted NJ Transit to charge plaintiff with a discipline point or met discipline while out of work on approved disability.

### *Background of plaintiff's termination*

24.     On November 2, 2017, plaintiff clocked in on time at the bus terminal at 5:30 am, picked up the bus and pulled out on time.

25.     Plaintiff returned from the morning shift on his bus run at 9:50 am., then left the terminal as permitted for a four hour break.

26.     Plaintiff arrived back at the Terminal premises at the required time - five minutes before the scheduled 2:02 p.m. pull out time - at about 1:57.  Plaintiff was already signed in and there was no midday sign in policy.

27.     Plaintiff picked up the bus, the depot manager noted his arrival, and plaintiff pulled out at 2:06 pm, within the allowed five minute grace period.  Plaintiff then completed his afternoon run.

28.     When plaintiff returned to the terminal at the end of the day on November 2,

2017, there were no notices or warnings posted or handed to plaintiff about his work performance that day.

29.    When plaintiff arrived to work on November 3, 2017, he was immediately terminated by the Camden assistant supervisor (Newton Terminal) Jennifer Piccoli.

30.    Piccoli claimed she viewed video footage that showed plaintiff arrived one minute late at the Terminal for the afternoon shift at 1:58 pm on November 2, 2017.  The video showed nothing to establish or prove plaintiff was the person in the video.

31.    Piccoli gave plaintiff a "miss", which was two points, which in turn gave plaintiff a total of 24 aggregate points for a 24 month period, which was the required total to terminate.

32.    The policy is the depot manager disciplines bus drivers, not Piccoli, and the depot manager at the terminal knew nothing about plaintiff's discipline or termination by Piccoli.

33.    Piccoli was well aware of plaintiff's approaching aggregate point total when she charged plaintiff with the two point "miss" on November 3, 2017, having been involved with prior unsuccessful attempts to discipline plaintiff in 2015 and earlier.

34.    The 24 point total included the administrative "ghost" point assigned when NJ Transit declared his FMLA ended when he was already on approved disability leave in 2016.

35.    But for the "ghost" point, even if the falsely assigned two points for the November 2, 2017 "miss" were valid, plaintiff would not have had 24 discipline points on November 3, 2017 and he would not have been terminated.

### *COUNT I*

***Plaintiff v. New Jersey Transit***
***ERISA - §502(a)(3)***
***[Interference with protected rights under ERISA - §510]***

36.    Plaintiff incorporates herein by reference paragraphs 1 through 35, inclusive, as

though the same were more fully set forth at length.

37.     During plaintiff's period of disability, NJ Transit was a statutory employer and plaintiff a "covered employee" under ERISA.

38.     During plaintiff's period of disability, plaintiff was a participant and a party-in-interest in the employee welfare benefit plan providing disability benefits under ERISA.

39.     NJ Transit disciplined, and terminated plaintiff's employment, after it assigned one occurrence point under the attendance policy simply because NJ Transit declared plaintiff was on approved disability when his unelected FMLA ended.

40.     The occurrence disability-related point later aggregated to a total of 24 points over a 24 month period when Piccoli falsely assigned the two point "miss" to plaintiff's attendance record on November 3, 2017, clearing the way for Piccoli to terminate plaintiff.

41.     Even if the two point "miss" Piccoli assigned to plaintiff's attendance record on November 3, 2017 was valid (it was not), the administrative point assigned plaintiff on December 12, 2016 caused the aggregation of points Piccoli used to terminate plaintiff.

42.     By so acting and/or failing to act, NJ Transit acted unlawfully under ERISA (29 U.S.C. §1140) by disciplining and discharging plaintiff as a participant in a defined welfare benefit plan.

43.     NJ Transit, acting as aforesaid, failed, neglected and refused to protect plaintiff's employment under ERISA.

44.     NJ Transit, acting as aforesaid, failed, neglected and refused to honor plaintiff's rights to be free from unlawful treatment, and to refrain from unlawful interference with his employment under the ERISA laws.

45.     As a result, plaintiff has suffered damages and other harm.

46.     As a further result, plaintiff is entitled to equitable and other civil relief under §510 of ERISA, 29 U.S.C. §1132(a)(3).

WHEREFORE, plaintiff, Ashshakir J. Campfield demands judgment in his favor and against defendant, New Jersey Transit for all statutory damages under ERISA, 29 U.S.C. §§1132(a)(3) and (g) including re-instatement and/or other equitable relief, restitution, equitable restitution, attorney's fees and costs, interest, such other relief under ERISA and as the court deems just, and such other relief as allowed by equity and law.

## COUNT II

### Plaintiff v. NJ Transit
### FMLA - Prohibited Acts
### [§2615(a)(1)]

47.     Plaintiff incorporates herein by reference paragraphs 1 through 46, inclusive, as though the same were more fully set forth at length.

48.     Defendant is a covered employer under the Family Medical Leave Act (FMLA).

49.     Plaintiff, under the FMLA position of NJ Transit, was an eligible employee entitled to FMLA leave due to a serious health condition.

50.     Plaintiff, under the FMLA position of NJ Transit, was entitled to full compliance by NJ Transit necessary and required for plaintiff to receive the benefits, protections and privileges under FMLA.

51.     Defendant, NJ Transit, acting as aforesaid, intentionally and willfully and/or, in the alternative, with neglect and carelessness attributable to one or more acts, conduct and/or omissions of its supervisors, agents, managers, representatives and persons in charge, violated plaintiff's rights, benefits and privileges under the FMLA, as follows:

7

(a)     failing, neglecting and/or refusing to provide plaintiff with specific written notice of the dates of his eligibility for FMLA, or that he was FMLA-eligible at all;

(b)     failing, neglecting and/or refusing to provide plaintiff with specific written notice of his (and NJ Transit's) rights and responsibilities under FMLA;

(c)     failing, neglecting and/or refusing to provide plaintiff with specific written notice that time on disability leave would have been designated as FMLA leave, including the dates, times, hours of FMLA leave;

(d)     failing, neglecting and/or refusing to identify, describe or reference in any required source, plaintiff's FMLA rights as regards FMLA-qualifying leave including hours/days accrued, used, hours/days of leave balance, and expiration date;

(e)     denying, or refusing to grant as the case may be, willfully and/or with neglect, plaintiff's FMLA leave and failing, neglecting and refusing to calculate and determine plaintiff's leave entitlement or advise or notify plaintiff of FMLA rights;

(f)     failing, neglecting and/or refusing to identify plaintiff's health condition(s) and status during the relevant time period as a "serious health condition" qualifying plaintiff for FMLA leave;

(g)     failing, neglecting and/or refusing to post and/or keep posted required notices in approved form under law, setting forth provisions of the FMLA, including information pertaining to leave time due, accrued and/or expired, and other information under FMLA;

(h)     disciplining plaintiff and terminating his employment, when it assigned one occurrence point under the attendance policy simply because NJ Transit declared plaintiff

was on approved disability when his putative FMLA ended.

(i)     disciplining plaintiff and terminating his employment, after the occurrence

disability-related point later aggregated to a total of 24 points over a 24 month period when

Piccoli assigned the invalid two-point "miss" on November 3, 2017;

(j)     terminating plaintiff for reasons relating to his attendance point received

simply because his putative FMLA leave expired, with no notice, advise, or warning to plaintiff;

(k)     willfully and/or with neglect, committing such other acts and/or omissions

in violation of plaintiff's rights, benefits and privileges under the FMLA.

52.     Plaintiff was entitled to, and failed to receive, the benefits and protections under

the FMLA.

53.     As a result of the foregoing, plaintiff has suffered harm and damages.

WHEREFORE, plaintiff, Ashshakir J. Campfield demands judgment in his favor and

against defendant, New Jersey Transit under the FMLA for compensatory damages in the form of

back pay and/or front pay, wage differentials, incidental and/or consequential damages, interest,

liquidated damages and/or doubling of damages to the extent provided by law, attorneys' fees,

equitable relief and equitable restitution including reinstatement to his position, costs of suit and

such other relief under the FMLA as the court deems just.

### COUNT III

### *Plaintiff v. NJ Transit*
### *The Civil Rights Act of 1866; 42 U.S.C. §1981*

54.     Plaintiff incorporates herein by reference paragraphs 1 through 53, inclusive, as

though the same were more fully set forth at length.

9

55.     On knowledge and information, other bus drivers at NJ Transit - all Caucasian - have committed more serious acts infractions in their employment than plaintiff, including theft, theft by deception, and crimes related to employment and were not disciplined or terminated.

56.     On knowledge and information, no Caucasion bus driver was ever falsely assigned discipline points or assigned discipline points for being on an approved disability.

57.     On knowledge and information, no Caucasion bus driver was ever falsely assigned discipline points or assigned a discipline point simply for being on FMLA that ended while out on a disability.

58.     On knowledge and information, no Caucasion bus driver was ever falsely assigned discipline points or assigned discipline points for being on FMLA while also on a qualifying disability.

59.     Plaintiff's race and/or racial characteristics - African American - were a significant factor in NJ Transit's intentional, willful and unlawful decisions, actions and/or omissions towards plaintiff in his employment at NJ Transit, compared to similarly situated Caucasian drivers at NJ Transit.

60.     Plaintiff's race and/or racial characteristics were a significant factor in NJ Transit's intentional, willful and unlawful decision to assign discipline points simply for being on an approved disability, compared to similarly situated Caucasian drivers at NJ Transit.

61.     Plaintiff's race and/or racial characteristics were a significant factor in NJ Transit's intentional, willful and unlawful decision to assign a discipline point simply for being on FMLA that ended while out on a disability, compared to similarly situated Caucasian drivers at NJ Transit.

62.     Plaintiff's race and/or racial characteristics were a significant factor in NJ

Transit's intentional, willful and unlawful decision to assign a discipline point for being on FMLA while also on a qualifying disability, compared to similarly situated Caucasian drivers at NJ Transit.

63.     No Caucasion bus driver was ever targeted and falsely assigned discipline points and terminated using Terminal camera video feed, particularly where nothing in the video supported or could prove plaintiff was in the video at all.

64.     Plaintiff was subjected to intentional discrimination in his employment with New Jersey Transit solely because of his race and/or racial characteristics, as an African American.

65.     Under law (42 U.S.C. §1981), plaintiff has the right, as a member of a racial class that is not the racial class that comprises the class of disparate treatment, to be free from intentional discrimination solely because of his race and/or racial characteristics.

66.     Under law (42 U.S.C. §1981), plaintiff has the right, as a member of a racial class that is not the racial class that comprises the class of the disparate treatment, to be free from denial of equal employment opportunities, benefits, conditions, privilege and status solely because of his race and/or racial characteristics.

67.     As a result of NJ Transit's unlawful actions, conduct and/or omissions as aforesaid, plaintiff has suffered direct and indirect harm and damages in his employment and life.

68.     Defendant, NJ Transit, acting as aforesaid, discriminated against plaintiff under The Civil Rights Act of 1866, 42 U.S.C. §1981, as amended, and has violated that Act.

69.     Defendant, NJ Transit, acting and/or failing to act as aforesaid, engaged in such illegal and discriminatory practices intentionally, with malice or with reckless disregard and indifference to the federally protected rights of plaintiff.

WHEREFORE, plaintiff, Ashshakir J. Campfield demands judgment in his favor and

against defendant, New Jersey Transit for monetary damages, compensatory damages (including back pay, front pay, wages and/or wage differential), incidental and consequential damages, prejudgment interest, liquidated damages, exemplary and/or punitive damages, injunctive relief and/or affirmative relief as determined by the court necessary to effect the purposes of The Civil Rights Act of 1866, as amended, including reinstatement of employment with all accoutrements and benefits, attorneys' fees and costs, and such other relief as the court deems just.

### *COUNT IV*

### *Plaintiff v. NJ Transit*
### *New Jersey Law Against Discrimintion-N.J.S.A. 10:5-1 - 42 (LAD)*

70.     Plaintiff incorporates herein by reference paragraphs 1 through 69, inclusive, as though the same were more fully set forth at length.

71.     NJ Transit, acting as aforesaid through one or more intentional, reckless and/or negligent acts, conduct and/or omissions, has committed unlawful discriminatory employment practices directed to plaintiff based on race, in violation of the LAD, N.J.S.A. 10:5-1 - 42.

72.     As a result, plaintiff has been affected and impacted adversely in his employment and termination from employment, has suffered discrimination in terms, conditions, privileges, benefits and accoutrements of his employment, and has suffered harm and damages all under the LAD, N.J.S.A. 10:5-1 - 42.

WHEREFORE, plaintiff, Ashshakir J. Campfield demands judgment in his favor and against defendant, New Jersey Transit for all remedies available in common law tort actions available to plaintiff, monetary and equitable restitution damages (including compensatory damages for back pay, wage differentials, benefits), incidental and consequential damages, prejudgment interest, liquidated damages, exemplary and/or punitive damages, injunctive relief

and/or affirmative relief as determined by the court necessary to effect the purposes of the LAD,

as amended, including reinstatement of employment with all accoutrements and benefits,

attorneys' fees and costs, and such other relief as the court deems just.

*/s/ J. Stephen Woodside*
J. Stephen Woodside
Attorney for plaintiff

J. STEPHEN WOODSIDE, P.C.
One Belmont Avenue
GSB Building - Suite 324
Bala Cynwyd, PA 19004
610-278-2442
610-278-2644 (fax)
jstephenwoodside@verizon.net

Dated: November 1, 2019