# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| **ASHSHAKIR J. CAMPFIELD** | : | **CIVIL ACTION** |
| *Plaintiff* | : | |
| | : | **NO. 19-19794** |
| **v.** | : | |
| | : | |
| **NEW JERSEY TRANSIT** | : | |
| *Defendant* | : | |

NITZA I. QUIÑONES ALEJANDRO, J.                                                                 SEPTEMBER 29, 2023

## MEMORANDUM OPINION

**INTRODUCTION**

Plaintiff Ashshakir J. Campfield ("Plaintiff") filed the present action against Defendant New Jersey Transit ("Defendant"), asserting claims of unlawful discrimination in violation of the Rehabilitation Act of 1973 (the "Rehabilitation Act"), 29 U.S.C. §701 *et seq.*, and Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq*. [ECF 27]. Specifically, Plaintiff asserts that Defendant unlawfully terminated Plaintiff's employment because of his race and prior disability.

Presently before this Court is Defendant's motion for summary judgment filed pursuant to Federal Rule of Civil Procedure ("Rule") 56, [ECF 112], which Plaintiff has opposed, [ECF 118].[1] The issues presented in the motion are fully briefed and, therefore, this matter is ripe for disposition. For the reasons set forth herein, Defendant's motion for summary judgment is granted, and judgment is entered in favor of Defendant on all of Plaintiff's claims.

---

[1] This Court has also considered Defendant's reply, [ECF 123], and Plaintiff's response to Defendant's statement of material facts, [*see* ECF 112-2, ECF 120]. In Plaintiff's response, Plaintiff incorporates by reference his partial motion for summary judgment, [ECF 110]. This Court has considered the relevant portions of Plaintiff's incorporated motion and his related reply, [ECF 124].

1

**BACKGROUND**

When ruling on a motion for summary judgment, a court must consider all record evidence and the supported relevant facts in the light most favorable to the non-movant—here, Plaintiff. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Galena v. Leone*, 638 F.3d 186, 196 (3d Cir. 2011). The facts relevant to the underlying motion are summarized as follows:[2]

> Plaintiff, who is African American, began his employment with Defendant, New Jersey Transit, as a union bus operator on September 16, 2010. Beginning January 1, 2016, Defendant implemented an Attendance Policy for bus operators as part of a governing collective bargaining agreement, wherein employees were given certain points for late arrival, unavailability, absence, or sickness ("Occurrence Points"). If an employee accrues twenty-four (24) Occurrence Points over a two-year period, the employee is subject to termination.
>
> On September 20, 2016, Plaintiff went on medical leave for a foot and hand injury. Defendant approved Plaintiff's leave under both its medical disability leave policy and the Family and Medical Leave Act ("FMLA"). By letter dated January 25, 2017, Patty Ruiz, Defendant's Bus FMLA Coordinator, advised Plaintiff:
>
>> As of Monday, December 12, 2016, you have exhausted your FMLA entitlement and this designation is closed as of that date. Please know that the remainder of your leave will continue as disability and will result in one total occurrence under the Attendance Policy. This action is done primarily for administrative purposes and there is nothing further you will need to provide us.
>
> (Pl's. Mot., ECF 110-1, Ex. P). The referenced Occurrence Point was given to Plaintiff on December 13, 2016. Plaintiff's disability condition and disability leave status with Defendant continued until March 19, 2017, when Plaintiff returned to work.
>
> On November 2, 2017, approximately eight months after returning from his medical leave, Plaintiff was scheduled to work a morning and afternoon shift. Garage supervisor Jennifer Piccoli informed Plaintiff that he was late for his afternoon shift and would be given an Occurrence Point. Plaintiff, however, maintains that he was not late, and that Ms. Piccoli racially profiled him when she used surveillance video footage to confirm his alleged late arrival time.

---

[2] These facts are taken from the parties' briefs, exhibits, and statements of facts. The Court has also considered the facts and evidence offered in Plaintiff's partial motion for summary judgment. To the extent that any facts are disputed, such disputes will be noted and, if material, are herein construed in Plaintiff's favor, the non-movant, pursuant to Rule 56.

On November 3, 2017, Plaintiff, with his union representative, attended the "first step hearing" with Ms. Piccoli, who informed them that Plaintiff had received two Occurrence Points for his late arrival the previous day, and that in accordance with the Attendance Policy he was being terminated for accruing a total of twenty-four (24) points over a two-year period.[3] The November 2, 2017 Occurrence Points serve as the basis for Plaintiff's racial discrimination claim.

Plaintiff and his union representative disputed his termination through Defendant's internal grievance process. The November 2, 2017 Occurrence Points and Plaintiff's termination were upheld at the "second step hearing" held before Lawrence Marchak (company representative) on November 10, 2017, and at the "third step hearing" before Marc Aisen (company representative) on November 28, 2017.

On May 1, 2018, Plaintiff dually filed a charge of racial discrimination with New Jersey's Division of Civil Rights (the "DCR") and the Equal Employment Opportunity Commission (the "EEOC"). Approximately seventeen months later, on October 23, 2019, having not heard anything from either the DCR or the EEOC with respect to his charge of discrimination, Plaintiff, through his attorney, submitted a form to the DCR expressing his request to "withdraw [his] charges filed with the New Jersey Division on Civil Rights and the Equal Employment Opportunity Commission." (Pl's Resp., ECF 118-1, Ex. Z). Despite "withdrawing" his charge, in the form submitted to the DCR, Plaintiff wrote that "he ha[d] exhausted all claims through DCR and, concurrently, through EEOC under statutory time period." *Id.* By letter dated October 31, 2019, the DCR advised Plaintiff that the matter had been "officially closed." (*Id.* at Ex. Y). The DCR letter also advised that the EEOC had been notified of the "withdrawal" and as a result of the withdrawal, EEOC "conclude[d] its processing of [the] charge." (*Id.*)

On November 4, 2019, Defendant filed the present case. [ECF 1].

**LEGAL STANDARD**

Rule 56 governs summary judgment motion practice. Fed. R. Civ. P. 56. Specifically, this Rule provides that summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.* A

---

[3] Defendant includes Plaintiff's record under the Attendance Policy in the underlying motion for summary judgment. Plaintiff was given a total of twenty-four (24) points, across twenty-one (21) occurrences, between January 5, 2016, and November 2, 2017. Plaintiff only challenges the validity of the one point from December 13, 2016, and the two points from November 2, 2017.

3

fact is "material" if proof of its existence or non-existence might affect the outcome of the litigation, and a dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. When evaluating a motion under Rule 56, the court must view the evidence in the light most favorable to the nonmoving party. *Galena*, 638 F.3d at 196.

Pursuant to Rule 56, the movant bears the initial burden of informing the court of the basis for the motion and identifying those portions of the record that the movant "believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). This burden can be met by showing that the nonmoving party has "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case." *Id.* at 322. After the movant has met its initial burden, summary judgment is appropriate if the nonmoving party fails to rebut the movant's claim by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials" that show a genuine issue of material fact or by "showing that the materials cited do not establish the absence or presence of a genuine dispute." Fed. R. Civ. P. 56(c)(1)(A)–(B). The nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The nonmoving party may not rely on "bare assertions, conclusory allegations or suspicions," *Fireman's Ins. Co. of Newark v. DuFresne*, 676 F.2d 965, 969 (3d Cir. 1982), or rest on the allegations in the pleadings, *Celotex*, 477 U.S. at 324. Rather, the nonmoving party must "go beyond the pleadings" and, either by affidavits, depositions, answers to interrogatories, or admissions on file, "designate 'specific facts showing that there is a genuine issue for trial.'" *Id.*

**DISCUSSION**

As noted, Plaintiff claims that Defendant violated the Rehabilitation Act and Title VII by discriminating against him based on his race and disability when Defendant terminated his employment. Defendant moves for summary judgment on all of Plaintiff's claims, primarily arguing that Plaintiff has not presented evidence sufficient to meet his burden with respect to the *prima facie* elements of his Rehabilitation Act claim, and that the Title VII claim is barred by Plaintiff's failure to exhaust administrative remedies. These arguments are addressed in turn.

*Count I – Rehabilitation Act*

At Count I of the complaint, Plaintiff asserts that his termination violated the Rehabilitation Act, 29 U.S.C. §794, *et seq.*, a statute that prohibits any program or activity that receives federal financial assistance from discriminating based on disability status.[4] The United States Court of Appeals for the Third Circuit (the "Third Circuit") has held that the Rehabilitation Act makes the law set forth in the Americans with Disabilities Act, (the "ADA"), 42 U.S.C. § 12101 *et seq*, applicable to federal employers and employees receiving federal funding. *Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007); *see also* 29 U.S.C. § 791(f).[5] Thus, cases under the ADA apply with equal force when interpreting and applying the Rehabilitation Act. *Mastrolia v. Potter*, 2010 WL 1752531, at *3 (D.N.J. Apr. 27, 2010) (citing *Mengine v. Runyon,* 114 F.3d 415, 420 n.4 (3d Cir.

---

[4] The Rehabilitation Act of 1973 provides, in relevant part: "No otherwise qualified individual with a disability. . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance. . . ." 29 U.S.C. § 794(a).

[5] "The standards used to determine whether this section has been violated in a complaint alleging [non-affirmative] action employment discrimination under this section shall be the standards applied under title I of the Americans with Disabilities Act of 1990 (42 U.S.C. [§] 12111 *et seq.*) and the provisions of sections 501 through 504, and 510, of the Americans with Disabilities Act of 1990 (42 U.S.C. [§§]12201-12204 and 12210), as such sections relate to employment." 29 U.S.C. § 791(f).

1997)). Therefore, at the summary judgment stage, Rehabilitation Act claims are generally analyzed under the burden-shifting analysis set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). *Wishkin*, 476 F.3d at 185.[6]

Here, Defendant argues that Plaintiff fails to establish a *prima facie* case of discrimination under the Rehabilitation Act. To establish a *prima facie* case, Plaintiff must show "that [he] (1) has a 'disability,' (2) is a 'qualified individual,' and (3) has suffered an adverse employment action because of that disability." *Freeman v. Chertoff*, 604 F. Supp. 2d 726, 731–32 (D.N.J. 2009) (citing *Turner v. Hershey Chocolate USA*, 440 F.3d 604, 611 (3d Cir. 2006)). Defendant argues that Plaintiff fails to present any evidence from which one could conclude that Plaintiff was disabled at the time of his termination. Indeed, Plaintiff concedes that his disability ended on March 19, 2017, when he was medically cleared to return to work. (*See* Pl's. Br., ECF 110, at p. 1; Pl's. Opp., ECF 118, at p. 10). As such, any Rehabilitation Act claim premised on the allegation that Plaintiff was terminated because of his disability is without evidentiary or legal support.

Notwithstanding his concession that he was not disabled at the time of his termination, Plaintiff asserts that he was disabled at the time he wrongly received a single Occurrence Point on December 13, 2016. Plaintiff contends that the December 13, 2016 Occurrence Point was wrongly issued because he was on approved disability leave at the time. Plaintiff further appears to argue that the issuance of the December 13, 2016 Occurrence Point, and the January 25, 2017 letter that informed him of the Occurrence Point, constituted either an adverse employment action on account

---

[6] Under the *McDonnell Douglas* framework, a plaintiff must first make a *prima facie* case of discrimination. *See McDonnell Douglas*, 411 U.S. at 802; *Burton v. Teleflex Inc.*, 707 F.3d 417, 426 (3d Cir. 2013). Once a plaintiff establishes a *prima facie* case of discrimination, the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason" for the adverse employment action. *McDonnell Douglas*, 411 U.S. at 802. If the defendant satisfies this step, the burden shifts back to the plaintiff to show that the legitimate reason(s) offered by the defendant is merely a pretext for discrimination. *Fuentes v. Perskie*, 32 F.3d 759, 804–05 (3d Cir. 1994).

of his disability or a failure to accommodate. Defendant disagrees and argues, however, that any such claim accrued on either December 13, 2016, or January 25, 2017, and is, therefore, barred by the applicable two-year statute of limitations.

The Rehabilitation Act does not include an express statute of limitations. The Rehabilitation Act was enacted prior to the effective date of the default four-year statute of limitations for federal statutes. *See* 28 U.S.C. § 1658. As such, federal courts borrow the statute of limitations of the most analogous state law cause of action. *Disabled in Action of Pa. v. Se. Pa. Transp. Auth.*, 539 F.3d 199, 208 (3d Cir. 2008). Thus, claims under the Rehabilitation Act are governed by the forum state statute of limitations for personal injury claims. *Id.* In New Jersey, the applicable state law in this matter, personal injury claims are subject to a two-year statute of limitations. N.J. Stat. § 2A:14-2(a). Accordingly, Plaintiff's Rehabilitation Act claims are governed by a two-year statute of limitations. *Mack v. Town of Morristown*, 2017 WL 2268320, at *3 (D.N.J. May 24, 2017) (citing *Disabled in Action*, 539 F.3d at 208). To determine whether Plaintiff's claim under the Rehabilitation Act is timely, this Court notes that a cause of action accrues once the plaintiff is on notice of the adverse employment action. *Thompson v. Kessler Inst. for Rehab., Inc.*, 2017 WL 3784036, at *3 (D.N.J. Aug. 31, 2017) (citing *Watson v. Eastman Kodak Co.*, 235 F.3d 851, 852-53 (3d Cir. 2000)).

If Plaintiff's Rehabilitation Act claim arises from Defendant's issuance of the December 13, 2016 Occurrence Point or the January 25, 2017 letter advising Plaintiff of the issuance—as Plaintiff now seems to argue—the claim accrued on one of those two dates. Thus, Plaintiff was required to file suit by either December 13, 2018, or January 25, 2019, respectively. Plaintiff, however, filed the complaint including the Rehabilitation Act claim, on November 4, 2019. As

7

such, Plaintiff's Rehabilitation Act claim, as now argued, is barred by the applicable two-year statute of limitations.

In Plaintiff's reply in support of his motion for partial summary judgment, [ECF 124], Plaintiff argues the statute of limitations is tolled by his administrative proceedings. Specifically, Plaintiff contends that the time for him to file his Rehabilitation Act claim did not begin to run until there was a final agency action on his charge of race discrimination. Plaintiff's tolling argument, however, fails for several reasons. Employees of non-federal employers, like Plaintiff here, are not required to exhaust administrative remedies before filing suit under the Rehabilitation Act. *Freed v. Consolidated Rail Corp.*, 201 F.3d 188, 192 (3d Cir. 2000); *see also Herring v. Chichester Sch. Dist.*, 2007 WL 3287400, at *3 (E.D. Pa. November 6, 2007) (affirming there is no administrative exhaustion requirement for employees of a public state employer that receives federal funding, *i.e.*, a school district). More importantly, Plaintiff did not file a charge of discrimination that included a Rehabilitation Act claim. Rather his charge of discrimination before the DCR and the EEOC was only for race discrimination. In the absence of any charge of discrimination asserting his current Rehabilitation Act claim, this Court is unaware of any legal support of tolling. Accordingly, in the absence of any basis for tolling, Plaintiff's newly devised Rehabilitation claim is barred by the two-year statute of limitations.

*Count II – Race Discrimination*

At Count II of the complaint, Plaintiff asserts that Defendant illegally terminated his employment on account of his race in violation of Title VII. Defendant moves for summary judgment on this claim on the basis that Plaintiff has failed to exhaust his administrative remedies because he withdrew his charge of discrimination before receiving a right-to-sue letter.

As a precondition to the commencement of a Title VII action in federal court, a complainant must first file a charge of discrimination with the EEOC and receive the EEOC's statutory notice of the right-to-sue. 42 U.S.C. § 2000e–5(e)(1); *Ostapowicz v. Johnson Bronze Co.*, 541 F.2d 394, 398 (3d Cir. 1976). These preliminary steps are essential parts of the statutory plan; thus, the aggrieved person is not permitted to bypass the administrative process. *Ostapowicz*, 541 F.2d at 398. Once a charge of discrimination is filed, the EEOC is required to investigate the charge and the complainant must allow a minimum of 180 days for the EEOC's investigation to proceed. 42 U.S.C. § 2000e–5(f)(1). If, after 180 days, the EEOC has not resolved the charge, it "shall so notify" the complainant. 42 U.S.C. § 2000e–5(f)(1). In the absence of such notice, a complainant, on his own, may request a right-to-sue letter and the EEOC must issue the letter promptly after such request. *Burgh v. Borough Council of Borough of Montrose*, 251 F.3d 465, 470 (3d Cir. 2001) (citing 29 C.F.R. § 1601.28(a)(1)). "[R]eceipt of the right-to-sue letter indicates that a complainant has exhausted administrative remedies, an essential element for bringing a claim in court under Title VII." *Id*. "A complainant may not bring a Title VII suit without having first received a right-to-sue letter." *Id.*

Here, as noted, Plaintiff dually filed his complaint of discrimination with the DCR and the EEOC on May 1, 2018. On October 23, 2019, having not heard from either the DCR or the EEOC, Plaintiff, through counsel, submitted a request to "withdraw" his charge of discrimination. In his withdrawal request, Plaintiff did not request a right-to-sue letter but instead wrote that "he ha[d] exhausted all claims through DCR and, concurrently, through EEOC under statutory time period." (Pl's. Resp., ECF 118-1, Ex. Z). By letter dated October 31, 2019, the DCR acknowledged Plaintiff's withdrawal of his claim and noted the matter had been "officially closed" with DCR,

9

that the EEOC had been notified of the withdrawal and, as a result of the withdrawal, the EEOC "conclude[d] its processing of [the] charge." (*Id.* at Ex. Y).

There is no dispute that Plaintiff did not request or receive a right-to-sue letter. Moreover, it is well-settled that a complainant's withdrawal of a charge of discrimination does not constitute either a request for a right-to-sue letter or an otherwise satisfaction of the exhaustion requirements. "A claimant who voluntarily withdraws [his] administrative charge of discrimination before obtaining a right-to-sue letter fails to exhaust administrative remedies and may not sue in court." *Schwinge v. Deptford Twp. Bd. of Educ.*, 2011 WL 689615, at *5 (D.N.J. Feb. 17, 2011); *see also Brundage v. Int'l Ass'n of Bridge, Structural & Ornamental Ironworkers, Local #401*, 2007 U.S. Dist. LEXIS 81036, at *33 (E.D. Pa. Oct. 24, 2007) (finding plaintiff failed to exhaust his administrative remedies when plaintiff withdrew his EEOC charges and the EEOC did not issue a right-to-sue letter); *Doe v. Winter*, 2007 WL 1074206, at *5 (M.D. Pa. Apr. 5, 2007) ("When a plaintiff voluntarily withdraws a claim at the administrative level, the exhaustion requirements of Title VII are not met." (citing *Rivera v. United States Postal Serv.*, 830 F.2d 1037, 1039 (9th Cir. 1987) ("To withdraw is to abandon one's claim, to fail to exhaust one's remedies."))). In light of Plaintiff's clear withdrawal of his charge and the absence of both a request and receipt of a right-to-sue letter, Plaintiff did not administratively exhaust his Title VII claim under the above caselaw.

Further, there is no support under which this Court could construe the DCR's letter dated October 31, 2019, as the requisite right-to-sue letter. A right-to sue-letter must include: "(1) [a]uthorization to the aggrieved person to bring a civil action . . . (2) [a]dvice concerning the institution of such civil action by the person claiming to be aggrieved, where appropriate; (3) [t]he charge; (4) [t]he Commission's decision, determination, or dismissal, as appropriate." 29 C.F.R. § 1601.28(e). The DCR's letter recognized Plaintiff's withdrawal and noted the matter had been

"officially closed" with the DCR and that the EEOC "conclude[d] its processing of [the] charge." (Pl's. Resp., ECF 118-1, Ex. Y). Nothing within the four corners of the letter meets the requirements for a right-to-sue letter. As such, any argument that the October 31, 2019 letter constitutes the requisite right-to-sue letter is misplaced.

To overcome the absence of the requisite right-to-sue letter, Plaintiff incorrectly relies on 42 U.S.C. §2000e-16(c) to argue that he was not required to receive a right-to-sue letter before filing his federal suit. However, Plaintiff's argument is misplaced because the statute on which he relies only applies to federal employees;[7] and it is undisputed that Plaintiff was not a federal employee when employed by Defendant. As such, §2000e-16(c) does not apply. Under these circumstances, Plaintiff has failed to exhaust his admirative remedies, barring the Title VII discrimination claim. [8]

---

[7] The statute is titled "Employment by Federal Government" and provides:

> "All personnel actions affecting employees or applicants for employment (except with regard to aliens employed outside the limits of the United States) in military departments as defined in section 102 of Title 5, in executive agencies as defined in section 105 of Title 5 (including employees and applicants for employment who are paid from nonappropriated funds), in the United States Postal Service and the Postal Regulatory Commission, in those units of the Government of the District of Columbia having positions in the competitive service, and in those units of the judicial branch of the Federal Government having positions in the competitive service, in the Smithsonian Institution, and in the Government Publishing Office, the Government Accountability Office, and the Library of Congress shall be made free from any discrimination based on race, color, religion, sex, or national origin."

42 U.S.C.A. § 2000e-16(a).

[8] Plaintiff has not argued or shown that an equitable exception is applicable. Since Title VII's charge-filing instruction is not jurisdictional, *Fort Bend Cnty., Texas v. Davis*, 139 S. Ct. 1843, 1846 (2019), the exhaustion requirement is subject to equitable exceptions. *Story v. Mechling*, 214 F. App'x 161, 163 (3d Cir. 2007). In *Story*, a panel of the Third Circuit determined the plaintiff had failed to demonstrate any basis for excusing his failure to exhaust, when the plaintiff maintained he had requested a right-to-sue letter and EEOC failed to issue one before he filed in federal court. *Id.* If an equitable exception is not warranted when a plaintiff indicates one was requested yet failed to receive a right-to-sue letter, an equitable exception is clearly not warranted here, where Plaintiff never requested a right-to-sue letter prior to filing suit.

11

**CONCLUSION**

For the foregoing reasons, this Court finds that Plaintiff has failed to meet his summary judgment burden with respect to any of his claims. Accordingly, Defendant's motion for summary judgment is granted. An Order consistent with this Memorandum Opinion follows.

*NITZA I. QUIÑONES ALEJANDRO*, J.